## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTOPHER COLWELL,
  Petitioner,

   vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
  Respondent.

Case No. 1:13-cv-43

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

   Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in

Lebanon, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

This matter is before the Court on the petition, respondent's return of writ with exhibits, and

petitioner's "traverse" in reply to the return of writ.  (Docs. 1, 7, 12).[2]

## I. PROCEDURAL HISTORY

### State Trial And Appeal Proceedings

   On July 19, 2010, the Hamilton County, Ohio, grand jury returned an indictment

charging petitioner with the following first-degree felony counts: one count of trafficking in

heroin in violation of Ohio Rev. Code § 2925.03(A)(2); one count of possession of heroin in

violation of Ohio Rev. Code § 2925.11(A); one count of trafficking in cocaine in violation of

Ohio Rev. Code § 2925.03(A)(2); and one count of possession of cocaine in violation of Ohio

---

[1] Although the petition and all subsequent pleadings submitted by petitioner in this action were filed *pro se*, attorney Larry W. Zukerman filed a notice of appearance on January 14, 2014, informing the Court that he and the law firm of Zukerman, Daiker, & Lear, Co., L.P.A. had been retained to represent petitioner "at all future states of the proceedings" held in this case.  (Doc. 14).

[2] Petitioner has also filed a motion requesting the "issuance of subpoena to produce documents, information or objects in a civil action."  (Doc. 8).  That motion has been addressed by the undersigned in a separate Order issued this date.

Rev. Code § 2925.11(A). (Doc. 7, Ex. 1). A "Major Drug Offender" specification was attached to the heroin trafficking and possession counts. (*Id.*).

Petitioner's initial trial counsel filed motions on petitioner's behalf to suppress "any and all evidence" obtained from petitioner by law enforcement officers. (*See id.*, Ex. 3-4). Petitioner contended that the evidence was obtained in violation of the Fourth Amendment because (1) the initial warrantless search of his hotel room, where the drugs were found by hotel staff "proceed[ing] under the auspices and direction of the police" when he was absent from the room, was improper; and (2) the police lacked probable cause to subsequently arrest and search him without a warrant after he returned to the room, "removed certain items" and was stopped "leaving the area." (*See id.*, Ex. 4). It appears from the record that the attorney who filed the suppression motions on petitioner's behalf later withdrew from the case, and new counsel was retained to represent petitioner. (*See id.*, Ex. 26, Entries docketed "9/13/10" and "10/15/10"). On December 2, 2010, in an entry signed by both petitioner and his counsel, petitioner withdrew his suppression motion. (*Id.*, Ex. 5).

On December 2, 2010, petitioner also entered a guilty plea to the heroin trafficking charge, with a potential sentence range of "3 to 10 years," in exchange for an agreed-to prison sentence of five (5) years and the dismissal of the remaining charges and "Major Drug Offender" specifications. (*See id.*, Exs. 6-7). In an Entry filed December 14, 2010, petitioner was sentenced in accordance with the plea agreement to a five (5) year prison term with credit for time served. (*Id.*, Ex. 8).

On January 6, 2011, petitioner filed a *pro se* notice of appeal to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 9). On March 9, 2011, the Court of Appeals *sua sponte* dismissed the appeal on the ground that petitioner had failed to comply with an order issued January 21, 2011 requiring him "to file a Docket Statement within seven days." (*Id.*, Ex.

10).

## State Post-Conviction Proceedings

On July 13, 2011, petitioner next filed a *pro se* "Motion For Post-Conviction Relief Pursuant To Ohio Revised Code 2953.21" with the trial court. (Doc. 7, Ex. 11). Petitioner claimed in the motion that his trial counsel provided ineffective assistance by "fail[ing] to conduct proper pre-trial investigation, in that counsel failed to pursue a suppression issue based upon attempts to evade the requirements of the Fourth Amendment via use of private citizens as agents of the police." (*Id.*). Petitioner contended that the "failure to investigate possible defenses also caused counsel to provide ineffective assistance during plea negotiations" and that, as a result of counsel's ineffectiveness, he "entered an unknowing, involuntary, and unintelligent plea." (*Id.*).

In the substance of the application, petitioner provided the following statement of facts and argument in support of his motion for post-conviction relief:

> The facts giving rise to this case occurred on July 8, 2010, at the Holiday Inn Express located at 5505 Rybolt Road in Cincinnati, Ohio. On said date, the Petitioner was arrested in possession of a duffel bag, and subsequently was interrogated by law enforcement officials at the hotel. The Petitioner was read his <u>Miranda</u> rights and stated that he understood them, then admitted that the drugs at issue were his. Inside the duffel bag was 996.68 grams of substance that contained both heroin and cocaine.
>
> After signing a <u>Miranda</u> waiver at the police station, the Petitioner told law enforcement officials that he was "fronted" the heroin from a supplier in Texas. The Petitioner shipped the heroin to Akron. Unable to sell the heroin, the Petitioner planned to take the heroin back to Texas. En route, the Petitioner received [a] call from friends in Chicago, causing the Petitioner to plan a trip thereto. Not wanting to take the heroin to Chicago, the Petitioner placed the heroin in the refrigerator of the room he rented at the Holiday Inn Express. . . .
>
> While in Chicago, the number of nights paid for in advance by the Petitioner expired, as the Petitioner's credit card upon which room payment was made was declined. Hotel employees entered the room, despite the posting of a "Do Not Disturb" sign on the door, to conduct a "health and welfare check." Inside the refrigerator in the room was the controlled substance at issue. Hotel workers contacted law enforcement officials, who advised that the substance be left in the

3

room. The Petitioner returned to the hotel, paid money owed the hotel and re-
entered the room. Police observed the Petitioner exiting the room in possession of
the duffel bag mentioned above, and arrested the Petitioner. The duffel bag was
immediately searched.

****

The Petitioner submits that he only entered the plea [of guilty to the heroin
trafficking charge] after counsel informed him that any further investigation into
the propriety of action by the hotel staff would be met with a withdrawal of the
plea offer. . . . Defense counsel did not engage in any investigation of the hotel
employees herein, to determine whether hotel employees acted under the auspices
of local law enforcement officials in searching the Petitioner's hotel room. The
Petitioner submits that he did not wish to plead guilty, but in the absence of
defense counsel conducting an investigation, the Petitioner had no choice but to
plead guilty.

(*Id.*, pp. 2-4). As evidentiary support, petitioner submitted his own un-notarized affidavit

"affirm[ing] and confirm[ing] all of the facts" contained in his motion and supporting

memorandum and that he "only entered a plea after [his] attorney informed [him] that any further

investigation into the propriety of action by the hotel staff would be met with a withdrawal of the

plea offer." (*See id.*, Ex. 12, "Affidavit of Christopher Colwell").

On July 28, 2011, the trial court denied the petition for post-conviction relief. (*Id.*, Ex.

14). The court reasoned that (1) petitioner's claims were barred from review by the "doctrine of

*res judicata*" because they "either were or could have been raised, at trial or on direct appeal";

and (2) petitioner had "failed to supply sufficient evidentiary documentation, outside of what is

provided in the existing record, to support his claims." (*Id.*).

Petitioner pursued an appeal to the Ohio Court of Appeals, First Appellate District, in

which he claimed that the trial court abused its discretion by (1) denying his post-conviction

petition based on the doctrine of *res judicata* and for lack of supporting evidentiary

documentation, and (2) not considering his argument that he had an "expectation to privacy in

his hotel room." (*See id.*, Exs. 15-16). Petitioner also contended in a third assignment of error

that his trial counsel was ineffective for "not pursuing whether police had probable cause to

detain and arrest [him] without an arrest warrant." (*Id.*, Ex. 16). On March 7, 2012, the Ohio

Court of Appeals overruled the assignments of error and affirmed the trial court's judgment.

(*Id.*, Ex. 18). Although the state appellate court concluded that petitioner's claim of ineffective

assistance by his trial counsel was not barred from review under the *res judicata* doctrine, the

court upheld the trial court's judgment because "the claim was properly denied on the alternative

basis that it was not adequately supported." (*Id.*, p. 2). Petitioner next filed a motion for

reconsideration, in which he argued that an evidentiary hearing was required to develop the

outside evidence that would support his post-conviction petition. (*Id.*, Ex. 19). On April 4,

2012, the Ohio Court of Appeals denied the motion for reconsideration without opinion. (*Id.*,

Ex. 21).

Petitioner appealed the state appellate court's decisions to the Ohio Supreme Court. (*Id.*,

Ex. 22). In his memorandum in support of jurisdiction, petitioner asserted the following

propositions of law:

1.  Where does the Constitutional Guarantee to the Effective Assistance of Counsel Begin and When is that Guarantee Enforced under Ohio Law.

2.  In Ohio Law the Use of the Doctrine of Res Judicata as a means to Dismiss a Properly filed Post Conviction Petition where the evidence dehors the record Denies the Defendant Due Process as guaranteed by The Constitutions of the United States and Ohio.

3.  The Ohio Legislature Enacted Ohio Revised Code 2935.04 for the very specific reasons Appellant submits that . . . in Rare Cases such as His This Court needs to address this issue as to the viability of the Law Enforcement Adhering to the mandates of this Statu[t]e.

(*Id.*, Ex. 23). On July 25, 2012, the Ohio Supreme Court declined jurisdiction to hear the case

and summarily dismissed the appeal "as not involving any substantial constitutional question."

(*Id.*, Ex. 25).

**Federal Habeas Corpus**

Petitioner next initiated the instant federal habeas corpus action in January 2013. In the

5

petition, he presents the following claims for relief:

> **Ground One:**  The absence of counsel during the Peti[tio]ner's state post-conviction proceedings caused a procedural default, in that Petitioner unlearned in the law was denied fair process and the opportunity to comply with state procedures and obtain adjudication on the merits.
>
> **Supporting Facts:**  Petitioner filed a pro se post-conviction [petition] for ineffective assistance of trial counsel, due to Petitioner's lack of knowledge of legal matters his petition was denied under a state procedural default.
>
> **Ground Two:**  The Petitioner's Sixth Amendment right to effective ass. of counsel during pre-trial proceedings was denied.  Specifically at the plea bargaining stage where counsel's failure to investigate caused Peti[tio]ner to enter an invalid plea.
>
> **Supporting Facts:**  Counsel failed to investigate, file for discovery, and research applicable case law, before advising Petitioner to accept plea offer from State. Review of record and applicable case law substantially supports suppression.
>
> **Ground Three:**  The Petitioner's Fifth Amendment right to due process of law was violated when he entered an unknowing, unintelligent, and involuntary plea, as the Petitioner was unaware of viable alternatives to pleading guilty based upon counsel's ineffective assistance.
>
> **Supporting Facts:**  Counsel advised Petitioner that there was no defense and it was in his best interest to accept the plea offer, even though a viable defense existed.
>
> **Ground Four:**  The Petitioner was denied full and fair opportunity to litigate his Fourth Amendment claims in state courts.
>
> **Supporting Facts:**  By defaulting Petitioner's claims throughout the state court proceedings, Petitioner was not able to litigate his substantial claims.
>
> **Ground Five:**  The Petitioner is entitled to an evidentiary hearing on these matters.
>
> **Supporting Facts:**  There has been enough evidentiary materials and fact of law presented to support granting an evidentiary hearing.

(Doc. 1, pp. 6, 8, 9, 11, 17).

Respondent has filed a return of writ addressing each of petitioner's claims.  (Doc. 7).

Petitioner has filed a "traverse" brief responding to the arguments asserted by respondent in the

return of writ.   (Doc. 12).

## II. OPINION

### A. Petitioner Is Not Entitled To Relief Based On The Claim In Ground One Stemming From The Absence Of Counsel In The State Post-Conviction Proceeding, Nor Is He Entitled To An Evidentiary Hearing As Requested In Ground Five Of The Petition

In Ground One of the petition, petitioner essentially contends that he was entitled under the Constitution to the effective assistance of counsel in the state post-conviction proceeding wherein he raised claims challenging the effectiveness of his trial counsel in advising him to enter a guilty plea. (Doc. 1, p. 4). It is petitioner's position that as a *pro se* litigant, he lacked the legal knowledge and ability to develop the evidentiary basis for his ineffective-assistance-of-trial-counsel claims and, therefore, was unable to properly present the claims to the state courts so that they could be fully reviewed on the merits. (*See id.*; *see also* Doc. 12, pp. 2-3). He cites the Supreme Court's decisions in *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309 (2012), and *Halbert v. Michigan*, 545 U.S. 605 (2005), as support for the argument that the absence of counsel in the state post-conviction proceeding should excuse his procedural default, which resulted in the state courts' summary denial of his ineffective-assistance-of-trial-counsel claims without an evidentiary hearing. In Ground Five of the petition, petitioner also requests that an evidentiary hearing be held for the purpose of establishing the facts that were not investigated by his trial counsel or developed and presented by petitioner in the state post-conviction proceeding. (*See* Doc. 1, p. 17; Doc. 12).

It is well-settled that the Federal Constitution does not impose any obligation on states to provide appellate review of criminal convictions. *See Halbert*, 545 U.S. at 610 (citing *McKane v. Durston*, 153 U.S. 684, 687 (1894)); *see also Evitts v. Lucey*, 469 U.S. 387, 393 (1985). However, "if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' . . . the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses" of the

Fourteenth Amendment. *Evitts*, 469 U.S. at 393 (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)). In *Douglas v. California*, 372 U.S. 353, 354-58 (1963), the Court held that in order to comport with the constitutional standards of due process and equal protection, a "first appeal, granted as of right to rich and poor alike," must include the right to appointed counsel for those defendants unable to afford retained counsel to represent them on appeal. In *Evitts*, 469 U.S. at 396-97, the Supreme Court further ruled that a "first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney" guaranteed by the Sixth Amendment. In *Ross v. Moffitt*, 417 U.S. 600, 610-12 (1974), the Court made it clear that the right to appellate counsel does not extend beyond the first appeal as of right to discretionary appeals to the state's highest court or to petitions for review by the United States Supreme Court. In *Halbert*, however, the Supreme Court held that in the context of first-tier appellate review of plea-based convictions, *Ross* is not controlling and that *Douglas* applies to require the appointment of counsel for indigent defendants, even when such review is discretionary under state law. *Halbert,* 545 U.S. at 616-17.

Although the Supreme Court has recognized that there is a constitutional right to counsel in first-tier error-correction review proceedings before state courts of appeals, the Court has never held that the right extends to state post-conviction or collateral review proceedings. Indeed, as the Court recognized in *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court has expressly "declined to extend the right to counsel beyond the first appeal of a criminal conviction." *Coleman*, 501 U.S. at 756 (citing *Ross* and *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). In *Coleman*, the Court held in accordance with its prior precedents that "[t]here is no right to an attorney in state post-conviction proceedings" and that, therefore, a habeas petitioner "cannot claim constitutionally ineffective assistance of counsel in such proceedings" as cause for his procedural default of a claim that was not presented on post-conviction review. *Id.* at 752-53

8

(citing *Finley*; *Murray v. Giarratano*, 492 U.S. 1 (1989); *Wainwright v. Torna*, 455 U.S. 586 (1982)).  More recently, in *Martinez*, 132 S.Ct. at 1315, the Court pointed out that *Coleman* left open the question whether a case in which "state collateral review is the first place a prisoner can present a challenge to his conviction" should be treated as an "exception" to the general rule established in *Finley* and *Giarratano* "that there is no right to counsel in state collateral proceedings."  *See also Coleman*, 501 U.S. at 755.  The *Martinez* Court went on to state that *Coleman* "had suggested, though without holding, that the Constitution may require States to provide counsel in initial-review collateral proceedings," which constitute "the first place a prisoner can present a challenge to his conviction."  *Martinez,* 132 S.Ct. at 1315 (citing *Coleman*, 501 U.S. at 755-56).  However, as in *Coleman*, the *Martinez* Court expressly refused to resolve whether an exception exists in such cases "as a constitutional matter."  *Id.*  Instead, the *Martinez* Court issued a narrow ruling, qualifying *Coleman* only to the extent that either "no counsel" or inadequate assistance of counsel at "initial-review collateral proceedings" may constitute "cause" for a prisoner's procedural default of a ground for relief that could only be raised in a collateral review petition.  *See id.* at 1315, 1320.

In this case, petitioner contends that he had a right to counsel in the state post-conviction proceeding because his ineffective-assistance-of-trial-counsel claims are based on evidence outside the record and thus could not have been raised on direct appeal, which only permits record-based review.  *Cf. Trevino v. Thaler*, __ U.S. __, 133 S.Ct. 1911, 1918-20 (2013) (holding that a state procedural system, which "in effect . . . directed defendants to raise claims of ineffective assistance of trial counsel on collateral, rather than direct, review," was governed by the ruling in *Martinez* allowing a federal habeas corpus court to find "cause" for a procedural default in an initial-review collateral proceeding based on either "no counsel" or "ineffective counsel" in that proceeding); *see also Raglin v. Mitchell*, No. 1:00cv767, 2013 WL 5468227, at

*7 (S.D. Ohio Sept. 29, 2013) (Barrett, J.) (and cases cited therein) (pointing out that "this Court has found that the *Martinez* exception applies" to Ohio post-conviction review cases involving ineffective-assistance-of-trial-counsel claims where (1) the claims "rely on evidence outside the trial record or (2) . . . trial counsel also served as appellate counsel, as counsel is not expected to assert his or her own ineffectiveness"). As an initial matter, it appears from the record that petitioner never lodged a request for counsel to assist in developing or presenting his ineffective-assistance-of-trial-counsel claims in the state post-conviction proceeding, nor did he argue on appeal from the denial of post-conviction relief that he had a right to counsel in that proceeding. (*See* Doc. 7, Exs. 11-12, 16, 19, 26). Therefore, the state courts did not have the opportunity to even consider the issue now raised by petitioner as a ground for federal habeas relief.

In any event, the holding in *Halbert*, recognizing that there is a constitutional right to counsel in a discretionary first-tier appellate-review proceeding, does not apply to the instant case. Rather, petitioner's claim is governed by the Supreme Court's line of cases which, at least at this juncture in time, have declined to hold that such a right extends to post-conviction collateral review proceedings. Because the Supreme Court has expressly refused to resolve whether or not such cases should be treated as an "exception" to the rule that there is no Sixth Amendment "right to an attorney in state post-conviction proceedings," *Coleman*, 501 U.S. at 752, petitioner is unable to prevail on any claim that he is entitled to habeas relief merely because he was not represented by counsel in the state post-conviction proceeding.[3]

Moreover, petitioner has not demonstrated that he is entitled to relief to the extent he

---

[3] It addition, to the extent petitioner claims he is entitled to relief based on alleged errors in the state post-conviction proceedings, his claim is not cognizable in this federal habeas action. As respondent has pointed out in the return of writ (*see* Doc. 7, Brief, p. 9), deficiencies in state collateral review proceedings fall outside the scope of federal habeas review because they involve "'collateral matters' as opposed to 'the underlying state conviction giving rise to the prisoner's incarceration.'" *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (quoting *Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1986)) (involving claim challenging the denial of the opportunity to present recantation evidence in a state post-conviction proceeding); *see also Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002).

contends that the absence of counsel in the state post-conviction proceeding constitutes "cause" for his procedural default of the ineffective assistance claims alleged as grounds for relief in Grounds Two and Three of the instant petition. To the extent that the claims are based on evidence in the record before the state courts, the *Martinez* exception is inapplicable because petitioner could have litigated them in an appeal as of right to the Ohio Court of Appeals.[4] *Cf. Raglin, supra,* 2013 WL 5468227, at *8 (holding that *Martinez* was inapplicable to record-based ineffective-assistance-of-trial-counsel claim because "under Ohio law Petitioner was barred from litigating his claim of ineffective assistance of trial counsel in post-conviction if he could have litigated it on direct appeal"); *see also Sheppard v. Robinson*, No. 1:00cv493, 2012 WL 3583128, at *4-7 (S.D. Ohio Aug. 20, 2012) (Merz, M.J.) (Report & Recommendation), *adopted*, 2013 WL 146342, at *5-14 (S.D. Ohio Jan. 14, 2013) (Frost, J.). Therefore, the only procedural default arguably occurring in the state post-conviction proceeding upon which petitioner could base his "cause" argument stemmed from his failure to provide "sufficient evidentiary documentation, outside of what is provided in the existing record," to avoid the summary dismissal of his ineffective-assistance-of-trial-counsel claims on state post-conviction review. (*See* Doc. 7, Ex. 14; *see also id.*, Ex. 18, p. 2).

Assuming, without deciding, that petitioner's failure to develop and present the requisite outside evidentiary support constitutes a procedural default of his underlying ineffective assistance claims, such claims are subject to federal habeas review only if petitioner demonstrates both "cause" for the default *and* "actual prejudice as a result of the alleged violation of federal law." *See Coleman*, 501 U.S. at 750. To overcome the default, the petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," or in other words, "has some merit." *Martinez*, 132 S.Ct. at 1318-19; *see also*

---

[4]As discussed below in addressing the claims alleged in Grounds Two and Three on the basis of the record as developed and presented to the state courts, petitioner has not demonstrated that he is entitled to federal habeas relief based on such claims.

*Trevino*, 133 S.Ct. at 1918.

Here, although petitioner has argued that lack of counsel in the post-conviction proceeding constitutes "cause" for his failure to develop and present the requisite evidentiary support for an ineffective assistance claim based on evidence outside the record, he has not made any showing of prejudice or that such a claim has any merit.  Petitioner's underlying claims are premised on the allegation that his trial counsel should not have advised him to plead guilty and instead should have pursued the motion to suppress by investigating whether hotel staff engaged in impropriety under the direction of the police in conducting the search of his hotel room that led to his warrantless arrest and search of his duffel bag and subsequent indictment on the heroin and cocaine trafficking and possession charges.  Apparently, the evidence outside the record that petitioner contends supports his claims of ineffectiveness is the information that would have been obtained if an investigation had been pursued by counsel.  However, it is purely speculative whether a further investigation would have revealed any additional evidence favorable to the defense on the Fourth Amendment issues raised in the suppression motion.  In any event, even assuming that such an investigation would have elicited additional favorable evidence, it does not mean that petitioner's trial counsel provided inadequate assistance in advising petitioner to plead guilty based on the evidence that was available when the State extended the plea offer.  At that time, petitioner was presented with a choice.  He could either (1) accept the plea offer and forego any further investigation into the propriety of the search conducted at the hotel, or (2) reject the plea offer in favor of a further investigation, which might or might not elicit additional evidence in support of his suppression motion.  The known benefit petitioner would receive by agreeing to plead guilty to the heroin trafficking charge was not only the dismissal of the other charges for non-allied offenses involving cocaine trafficking and possession and the "Major Drug Offender" specifications, which would have carried much greater penalties, but also a

12

stipulated five-year prison sentence for an offense that carried a maximum sentence of ten years.

In contrast, by opting to pursue a further investigation into the hotel search rather than accept the

plea offer, petitioner faced the risk that no favorable evidence and even damaging information

would be uncovered and that he would be convicted and receive maximum consecutive

sentences on the non-allied cocaine and heroin charges, as well as the "Major Drug Offender"

specifications.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the

standard of review to be used in deciding ineffective-assistance-of-counsel claims. The standard

is a two-part test, requiring a showing by the petitioner that (1) counsel's performance fell

outside the wide range of reasonable professional assistance, *and* (2) there is a "reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have

insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (applying *Strickland* to a

claim of ineffective assistance in the guilty plea context); *see also Strickland*, 466 U.S. at 687-

88, 694. The *Strickland* Court provided the following guidance in assessing the reasonableness

of counsel's conduct under the first prong of the test:

> *A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.* Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .
>
> The availability of intrusive post-trial inquiry into attorney performance . . . would encourage the proliferation of ineffectiveness challenges. . . . Counsel's performance and even willingness to serve could be adversely affected . . . .
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct*."

*Strickland,* 466 U.S. at 689-90 (emphasis added).

13

More recently, in *Premo v. Moore*, _ U.S. _, 131 S.Ct. 733 (2011), the Supreme Court provided further guidance, which is particularly applicable to the case-at-hand, in upholding the state courts' determination that counsel's failure to seek suppression of a confession before advising the petitioner to accept a plea offer did not amount to ineffective assistance under *Strickland*'s deferential standard of review. Specifically, the *Premo* Court stated:

> "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve.". . .

> **\*\*\*\***

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. . . .

> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. . . . There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. . . .

> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. . . . The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates . . . could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

> Whether before, during, or after trial, when the Sixth Amendment applies, the

14

formulation of the standard is the same: reasonable competence in representing the accused. . . . In applying and defining this standard substantial deference must be accorded counsel's judgment. . . . But at different stages of the case that deference may be measured in different ways.

In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take. It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived. *The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.*

*Id.* at 739-42 (quoting *Harrington v. Richter*, _ U.S. _, 131 S.Ct. 770, 788 (2011)) (internal citations to *Strickland* omitted).

*Strickland* and *Premo* mandate that counsel's conduct be evaluated on the basis of the information that was known to counsel at the time the plea offer was extended. Therefore, whether or not any further investigation would have revealed evidence favorable to petitioner on the Fourth Amendment issues raised in his suppression motion has no bearing on whether counsel's performance fell outside the wide range of reasonable professional assistance at the time the plea offer was made – an offer that was expressly contingent on petitioner's foregoing any further investigation.

Finally, to the extent that petitioner requests in Ground Five that an evidentiary hearing be held by this Court to develop the facts that were not brought out in the trial or state post-conviction proceedings, the request should be denied. As discussed above, any further inquiry into what an investigation would have revealed about the propriety of the search and seizure that occurred at the hotel is simply irrelevant in assessing whether trial counsel was ineffective in advising petitioner to accept the State's plea offer based on the information known to counsel at that time in balancing the opportunities and risks of the plea bargain. In any event, this Court's review is limited to the record that was before the state court in ruling on petitioner's post-

conviction petition. *See Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398 (2011); *Moore v. Mitchell*, 708 F.3d 760, 780-84 (6th Cir.), *cert. denied*, 134 S.Ct. 693 (2013). To the extent that petitioner seeks to circumvent the holding in *Pinholster* by arguing that an evidentiary hearing is required for his claim under *Martinez* that the absence of counsel in the state post-conviction proceeding constitutes "cause" for his procedural default in failing to develop and present the outside evidence supporting his post-conviction ineffective assistance claims, the Sixth Circuit has expressly held that "*Pinholster* plainly bans such an attempt to obtain review of the merits of claims presented in state court in light of facts that were not presented in state court" and that "*Martinez* does not alter that conclusion." *Moore*, 708 F.3d at 785.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief based on the allegation in Ground One of the petition that he lacked counsel to adequately develop and present his ineffective-assistance-of-trial-counsel claims in the state post-conviction proceedings. In addition, petitioner's request in Ground Five for an evidentiary hearing to develop facts that were not presented to the state courts should be denied.

**B.  To The Extent The Claims Alleged In Grounds Two and Three Challenging Trial Counsel's Plea Advice May Be Reviewed On The Basis Of The State-Court Record, Petitioner Has Not Demonstrated That He Is Entitled To Relief Based On Such Claims**

In Grounds Two and Three of the petition, petitioner alleges his guilty plea is invalid because it was entered unknowingly, involuntarily and unintelligently due to his trial counsel's ineffectiveness during the plea negotiations process. (*See* Doc. 1, pp. 8-9). Specifically, in Ground Two, petitioner contends that his attorney was ineffective for failing to adequately investigate and research issues raised in the suppression motion before advising petitioner to accept the State's plea offer. (*Id.*, p. 8). In Ground Three, he claims that his attorney improperly advised him that "it was in his best interest to accept the plea offer" because he lacked a "viable defense." (*Id.*, p. 9). Petitioner presented the claims to the state courts by way of his petition for

post-conviction relief and did not pursue his state appellate remedies. (*See* Doc. 7, Ex. 9-10, 11-

12, 15-16, 22-23). As discussed above in addressing Grounds One and Five of the petition, to

the extent that the claims are subject to a review on the merits, this Court's review is limited to

the record as developed and presented to the state courts.[5]

In this federal habeas case, the applicable standard of review governing the adjudication

of constitutional issues raised by plaintiff to the state courts is set forth in 28 U.S.C. § 2254(d).

Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated

on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the United States
> Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at

a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

*Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's

adjudication only results in an 'unreasonable application' of clearly established federal law when

---

[5] An argument can be made that to the extent the claims alleged in Grounds Two and Three are based on evidence contained in the state-court record, petitioner failed to fairly present his claims to the state courts by pursuing only post-conviction relief. The claims were subject to state post-conviction review only to the extent that they were based on evidence outside the record because, under Ohio law, the doctrine of *res judicata* applies to bar collateral review of claims that were or could have been raised on direct appeal. *See, e.g., State v. Cole,* 443 N.E.2d 169 (Ohio 1982); *State v. Perry,* 226 N.E.2d 104 (Ohio 1967). Here, the Ohio Court of Appeals, which was the last state court to issue a reasoned decision addressing petitioner's post-conviction petition, determined that petitioner had failed to submit sufficient evidentiary support for his claims. (*See* Doc. 7, Ex. 18). The court's ruling suggests that no record-based review of the claims' merits was conducted. Respondent has not argued in the return of writ that by pursuing only state post-conviction relief, petitioner procedurally defaulted and has waived his claims for federal habeas relief to the extent that they are based on evidence in the record. Therefore, the undersigned will assume that no such default occurred and that the Ohio courts considered the evidence in the record in finding that petitioner had not submitted adequate evidentiary support for his claims.

'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable.* . . . This is a "substantially higher threshold." . . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams,* __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington,* 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner

must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, the standard of review governing petitioner's ineffective-assistance-of-counsel claims is "doubly deferential." *See Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 13 (2013); *Premo v. Moore*, ___ U.S. ___, 131 S.Ct. 733, 739-40 (2011) (quoting *Harrington*, 131 S.Ct. at 787-88); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). As discussed above in addressing Ground One of the petition, in order to establish that counsel's challenged conduct amounted to ineffective assistance under the applicable two-part standard of review established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), petitioner must demonstrate that counsel's conduct "fell below an objective standard of reasonableness" and resulted in prejudice. In examining the reasonableness of counsel's performance, the court "must indulge a strong presumption that counsel's conduct f[ell] within the wide range of

19

reasonable professional assistance." *Strickland,* 466 U.S. at 689.  Furthermore, in order to satisfy

the second "prejudice" prong of the *Strickland* test, petitioner "must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In *Hill*, the Court

explained by way of example:

> [W]here the alleged error of counsel is a failure to investigate or discover
> potentially exculpatory evidence, the determination whether the error
> "prejudiced" the defendant by causing him to plead guilty rather than go to trial
> will depend on the likelihood that discovery of the evidence would have led
> counsel to change his recommendation as to the plea.  This assessment, in turn,
> will depend in large part on a prediction whether the evidence likely would have
> changed the outcome of a trial.  Similarly, where the alleged error of counsel is a
> failure to advise the defendant of a potential affirmative defense to the crime
> charged, the resolution of the "prejudice" inquiry will depend largely on whether
> the affirmative defense likely would have succeeded at trial.

*Id.*

Although "[s]urmounting *Strickland*'s high bar is never an easy task," *Harrington*, 131

S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)), the AEDPA requires that a

second layer of deference be accorded the state courts' adjudication of ineffective assistance

claims.  The Supreme Court has explained:

> Even under *de novo* review, the [*Strickland*] standard for judging counsel's
> representation is a most deferential one. . . .
>
> **** 
>
> Establishing that a state court's application of *Strickland* was unreasonable under
> § 2254(d) is all the more difficult.  The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," . . . and when the two apply in tandem,
> review is "doubly" so. . . .  The *Strickland* standard is a general one, so the range
> of reasonable applications is substantial. . . .  Federal habeas courts must guard
> against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable.  The question is whether there is any
> reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S.Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and *Knowles*, 556 U.S. at

123); *see also Premo*, 131 S.Ct. at 740.  Therefore, on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 131 S.Ct. at 785.

Here, the Ohio Court of Appeals could have reasonably determined from the evidence in the record and presented by petitioner in support of his post-conviction petition that he had not shown his counsel's challenged conduct fell outside the wide range of reasonable professional assistance or prejudicially affected the outcome of the plea process under the applicable two-part standard of review enunciated by the Supreme Court in *Strickland* and applied in *Hill*.  In Grounds Two and Three, petitioner essentially contends that his counsel provided ineffective assistance by advising him to accept the plea bargain that had been offered by the State rather than pursue the suppression motion as a "viable defense." (*See* Doc 7, Ex. 12, p. 8).  However, it was reasonable for the state courts to conclude from the evidence in the record that it constituted "sound trial stategy," *Strickland*, 466 U.S. at 689, for counsel to give such advice after weighing the opportunities and risks involved with the plea bargain.

It appears from the record that the State's plea offer was made expressly contingent on petitioner's not pursuing "any further investigation into the propriety of action by the hotel staff" with respect to the search that led to petitioner's arrest and indictment on the drug charges. (*See* Doc. 7, Ex. 11, p. 3).  Therefore, as discussed above in addressing Ground One of the petition, petitioner was faced with a choice when the plea offer was made.  He could either (1) pursue a further investigation with unknown results, or (2) plead guilty to the heroin trafficking charge in exchange for a known five-year prison sentence for an offense that carried a maximum sentence of ten years and the dismissal of all other charges, including the "Major Drug Offender" specifications, which also carried significant additional penalties.  Under the circumstances, it

21

was not unreasonable for counsel to advise petitioner to accept the plea deal rather than face the risk that his suppression motion might ultimately be denied and that he would have to proceed to trial with the possibility of conviction on all charges and specifications and the imposition of a significantly greater sentence than the five-year sentence that had been agreed to by the State.

Indeed, at the time the plea offer was extended, petitioner's counsel could have reasonably determined from the circumstances surrounding the search of the hotel room and petitioner's subsequent arrest that petitioner lacked a viable Fourth Amendment defense and had little, if any, chance of succeeding on any of the issues raised in his suppression motion. According to the statement of facts provided by petitioner in his post-conviction petition, his Cincinnati hotel room was not searched by the police, but by hotel staff *after* he defaulted on rental payments for the room while absent for a number of days visiting Chicago. (*See* Doc. 7, Ex. 11, p. 3). Police were contacted *after* the suspicious package containing the drugs was discovered by hotel staff during their search of the room. There is no evidence in the record that police ever entered or searched the room. Instead, police directed hotel staff to leave the package where they found it inside the refrigerator in the room. (*Id.*). Only later, after petitioner returned to the hotel, paid the money he owed and was observed exiting the room with a duffel bag, did the police stop and arrest petitioner and search the duffel bag in which the heroin and cocaine were found.

First, the facts relayed by petitioner regarding the search of his hotel room by hotel staff do not suggest that a Fourth Amendment violation occurred during that search. Although the Supreme Court has held that "a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures," *Stoner v. California*, 376 U.S. 483, 490 (1964), it is also well-settled that "the Fourth Amendment proscribes only governmental action, and does not apply to . . . even an unreasonable [search] effected by a private individual not acting as an agent

of the government or with the participation or knowledge of any governmental official." *United States v. Allen*, 106 F.3d 695, 698 (6th Cir. 1997) (citing *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921), and quoting *United States v. Coleman*, 628 F.2d 961, 964-65 (6th Cir. 1980), in support of finding that the defendant had "correctly . . . not argu[ed] that the [motel] manager's initial search of his motel room was proscribed by the Fourth Amendment"). Although petitioner stated in his post-conviction petition that hotel staff acted under the "auspices" and "instruction" of local law enforcement officials in searching the hotel room (*see* Doc. 7, Ex. 11, p. 3 & Ex. 12, p. 5), there is no evidence in the record supporting those conclusory assertions. In any event, petitioner faced another significant hurdle in establishing illegality under the Fourth Amendment given that the search was conducted after he had defaulted on rental payments for the room and, therefore, arguably no longer had a legitimate expectation of privacy in the room or its contents. *Cf. Allen*, 106 F.3d at 699-700 (and numerous cases cited therein) ("Once a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any article therein of which the hotel lawfully takes possession.") (internal quotation marks and citation omitted); *see also United States v. Lanier*, 636 F.3d 228, 232-33 (6th Cir. 2011); *United States v. Spicer*, __ F. App'x __, No. 12-3713, 2013 WL 6486800, at *3 (6th Cir. Dec. 11, 2013).

Second, the facts surrounding petitioner's subsequent arrest and the search of his duffel bag do not appear to implicate Fourth Amendment concerns. A strong argument can be made that when petitioner was observed exiting the hotel room where the contraband had previously been discovered by hotel staff, the police had probable cause to arrest petitioner without a warrant and to search the duffel bag as incident to the arrest. *Cf. Lanier*, 636 F.3d at 233-34 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (probable cause to arrest established where "the facts and circumstances within [the police officer's] knowledge and of which [he] had

reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that [the

petitioner] had committed or was committing an offense"); *see also United States  v. Watson*,

423 U.S. 411, 417-18 (1976); *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975) (and Supreme

Court cases cited therein).  As the Supreme Court stated in *United States v. Robinson*, 414 U.S.

218, 234-35 (1973):

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion
> under the Fourth Amendment; that intrusion being lawful, a search incident to the
> arrest requires no additional justification.  It is the fact of the lawful arrest which
> establishes the authority to search, and we hold that in the case of a lawful arrest a
> full search of the person is not only an exception to the warrant requirement of the
> Fourth Amendment, but is also a 'reasonable' search under that Amendment.

*See also United States  v. Romero*, 452 F.3d 610, 619-20 (6th Cir. 2006) (and cases cited therein)

(item within the defendant's "immediate control" near the time of his arrest may be validly

searched as part of the search incident to arrest); *United States  v. Garner*, 46 F. App'x 278, 287

(6th Cir. 2002) (upholding denial of motion to suppress cocaine seized during the search of a

duffel bag that the defendant had with him because the search was permissible as a search

incident to an arrest).

Finally, to the extent petitioner contends that his counsel should have conducted a further

investigation into the Fourth Amendment issues before advising him to accept the plea offer, he

has made no showing that such an investigation would have led to the discovery of any evidence

favorable to the defense or that would have otherwise led petitioner's counsel to change his

recommendation regarding the State's plea offer.  As the Sixth Circuit stated in an analogous

case, the petitioner "cannot show deficient performance or prejudice . . .  if [he] does not make

some showing of what evidence counsel should have pursued and how such evidence would

have been material." *Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir. 2002) (citing *Austin v.*

*Bell*, 126 F.3d 843, 848 (6th Cir. 1997)); *see also Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir.

2002) (no prejudice found under *Strickland* because the petitioner failed to demonstrate that the

evidence counsel should have pursued "would have been beneficial to the defense"). In the absence of any such evidence in the record, it was reasonable for the Ohio Court of Appeals to conclude that counsel's decision to opt for a "quick plea bargain" without conducting any further investigation of the circumstances surrounding what otherwise appeared to be a legitimate search of petitioner's hotel room fell within the wide range of reasonable professional assistance under the first prong of the *Strickland* test and did not prejudicially affect the outcome of the plea process under the second prong of the *Strickland* test as applied in *Hill*. *Cf. Premo*, 131 S.Ct. at 740-43.

Accordingly, in sum, petitioner has not demonstrated that he is entitled to relief on the merits of the ineffective-assistance-of-trial-counsel claims alleged in Grounds Two and Three of the petition to the extent such claims are subject to review based on the record as developed and presented to the state courts. Petitioner has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of the Sixth Amendment issue is contrary to *Strickland*, or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87. Therefore, Grounds Two and Three of the petition should be denied with prejudice.

**C. Petitioner Is Not Entitled To Habeas Relief Based On The Claim Alleged In Ground Four That He Was Denied A Full And Fair Opportunity To Litigate His Fourth Amendment Claims In The State Courts**

In Ground Four of the petition, petitioner alleges that he is entitled to habeas relief because he was denied a "full and fair opportunity" to litigate his Fourth Amendment claims in the state post-conviction proceedings. (Doc. 1, p. 11).

As a threshold matter, by entering an unconditional guilty plea to the heroin trafficking charge, petitioner waived the right to assert a Fourth Amendment claim challenging the search

that led to his arrest and indictment. *Cf. United States v. Shoulders,* 102 F. App'x 470, 470-71

(6th Cir. 2004) (citing *United States v. Kirksey*, 118 F.3d 1113, 1114-15 (6th Cir. 1997)

(involving forfeiture of right to appeal denial of suppression motion)); *United States v. Lang*, 46

F. App'x 816, 818 (6th Cir. 2002); *Williams v. Warden, Noble Corr. Inst.*, No. 1:07cv653, 2009

WL 6058620, at *16 & n.11 (S.D. Ohio June 4, 2009) (Black, M.J.) (Report &

Recommendation) (and numerous cases cited therein), *adopted*, 2010 WL 1031576 (S.D. Ohio

Mar. 16, 2010) (Spiegel, J.). As the Supreme Court has stated:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards [required by the Sixth Amendment].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To extent petitioner contends that he was deprived of the opportunity to fully and fairly

challenge the advice he received from counsel in the state post-conviction proceedings as a result

of his failure to provide sufficient evidentiary support for his ineffective-assistance-of-counsel

claims, he has not stated a cognizable ground for federal habeas relief. As noted above in

addressing petitioner's claim in Ground One of the petition, deficiencies in state collateral review

proceedings fall outside the scope of federal habeas review because they involve "'collateral

matters' as opposed to 'the underlying state conviction giving rise to the prisoner's

incarceration.'" *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (quoting *Kirby v. Dutton*,

794 F.2d 245, 247-48 (6th Cir. 1986)) (involving claim challenging the denial of the opportunity

to present recantation evidence in a state post-conviction proceeding); *see also Roe v. Baker*, 316

F.3d 557, 571 (6th Cir. 2002). In any event, as discussed above in addressing the claims alleged

in Grounds One, Two and Three of the petition, petitioner has not demonstrated that further

development of the record in the state post-conviction proceedings was necessary or would have

even elicited relevant or favorable information in assessing whether petitioner's trial counsel was ineffective in advising petitioner to accept the State's plea offer rather than proceed with the suppression motion, which had little likelihood of success given the circumstances surrounding the search that were known to counsel at that time.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice, and that petitioner's request for an evidentiary hearing be **DENIED**.

2. A certificate of appealability should not issue with respect to the any of the claims alleged in the petition in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 2/10/2014

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTOPHER COLWELL,                     Case No. 1:13-cv-43
     Petitioner

     vs                                 Dlott, J.
                                        Litkovitz, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
     Respondent

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

28